Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| CARLOS VARGAS RUBIO, LUIS DANIEL FERNÁNDEZ RIVERA, EUGENIO MARTÍNEZ DE JESUS<br>Parte Apelante<br><br>v.<br><br>SITE RESOURCE GROUP (PUERTO RICO) LLC<br>Parte Apelada | KLAN202500538 | Apelación procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Civil Núm.: AR2024CV00334<br><br>Sobre: Despido Injustificado (Ley Núm. 2) |

Panel integrado por su presidente, el Juez Pagán Ocasio, el Juez Rodríguez Flores y el Juez Cruz Hiraldo[1]

Rodríguez Flores, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 12 de agosto de 2025.

La parte apelante, compuesta por el Sr. Carlos Vargas Rubio (Sr. Vargas Rubio), el Sr. Luis Daniel Fernández Rivera (Sr. Fernández Rivera) y el Sr. Eugenio Martínez de Jesús (Sr. Martínez de Jesús) (en conjunto, los apelantes), solicita que revoquemos la *Sentencia* emitida y notificada el 2 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI)[2]. En el referido dictamen, el TPI declaró con lugar las tres (3) mociones de sentencia sumaria presentadas por Site Resource Group (Puerto Rico) LLC (SITE o parte apelada) y desestimó con perjuicio las reclamaciones instadas por los apelantes.

El 14 de julio de 2025, SITE presentó un *Alegato en oposición.*

Luego de examinar los escritos de las partes y el derecho aplicable, confirmamos la *Sentencia* apelada.

---

[1] Debido a la inhibición del Hon. Roberto J. Sánchez Ramos, mediante la Orden Administrativa OATA-2025-147 del 4 de agosto de 2025, se designa al Hon. Joel A. Cruz Hiraldo.
[2] Apéndice de la Apelación, Anejo 7, págs. 1252-1266.

**I.**

El 21 de febrero de 2024, los apelantes presentaron conjuntamente una *Querella[3]* sobre despido injustificado en contra de SITE[4], a tenor con el procedimiento sumario establecido en la *Ley de Procedimiento Sumario de Reclamaciones Laborales[5]*. Conforme surge de la *Querella*, el Sr. Vargas Rubio comenzó a laborar como supervisor en SITE el 27 de septiembre de 2022[6] y el Sr. Fernández Rivera laboró ocupando el puesto de arbolista el 17 de septiembre de 2022. Ambos fueron cesanteados el 9 de noviembre de 2023[7]. Por su parte, el Sr. Martínez de Jesús laboró desde el 18 de julio de 2022 como empleado de almacén *(Warehouse)* y luego como *Project Administrator* y fue destituido de su puesto el 28 de septiembre de 2023[8]. Los apelantes arguyeron que en todo momento, estos mantuvieron un desempeño satisfactorio en su empleo y que no incurrieron en faltas o conductas que justificaran su despido. Por consiguiente, cada uno de ellos reclamó que SITE les adeudaba sumas por concepto de mesada e indemnización progresiva conforme lo establecido en la *Ley de Despido Injustificado[9]*. En particular, el Sr. Vargas Rubio reclamó la suma de $22,200.00, el Sr. Fernández Rivera $13,800.00 y el Sr. Martínez De Jesús $15,000.00.

El 11 de marzo de 2024, SITE presentó una *Contestación a la Querella,* en la que argumentó que, los apelantes fueron despedidos

---

[3] *Íd.*, Anejo 1, págs. 1-4.
[4] Antes denominada Centurion Group. A solicitud de ésta, el 11 de septiembre de 2024, el TPI emitió una *Orden* en la que ordenó el cambio de nombre de la parte querellada de Centurion Group a **SITE Resource Group.** (Véase entradas 29 y 30 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[5] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118, *et. seq.*
[6] Conforme a lo establecido en el Art. 1.2 de la *Ley de Transformación y Flexibilidad Laboral*, (Ley Núm.4-2017), según enmendada, 29 LPRA sec. 121a, le es de aplicación la citada ley.
[7] *Íd.*
[8] *Íd.*
[9] Ley Núm. 80 de 30 de mayo de 1976, según enmendada. 29 LPRA sec. 185a, *et. seq.*

por causa justificada ante su reiterado incumplimiento con las políticas de seguridad y protocolo de análisis de riesgos en sus labores.[10] Señaló que éstos recibieron amonestaciones en varias ocasiones por incidentes separados en los que violaron las medidas de seguridad y protocolos establecidos por la compañía. En específico, SITE expuso que, el 5 de noviembre de 2022, mientras los apelantes viajaban en dos camionetas por un camino inclinado y cubierto en su totalidad de lodo, ocurrió un incidente en el que los vehículos sufrieron daños y quedaron atascados en una zanja. Arguyó que los apelantes incumplieron con los protocolos establecidos en cuanto a completar un análisis de posibles riesgos, amenazas y tareas críticas, así como las reglas de conducta de la compañía, tales como acordonar el área del incidente y notificar al supervisor cuando el primer vehículo quedó atorado. SITE arguyó que, los apelantes tenían pleno conocimiento de las normativas y políticas de la parte apelada y señaló que éstos fueron advertidos de las posibles medidas disciplinarias, incluyendo la terminación de empleo, si estos continuaban incurriendo en faltas al protocolo y política operacional. SITE sostuvo que la conducta de los apelantes afectó el buen y normal funcionamiento del negocio, constituyendo la justa causa para el despido que requiere la Ley Núm. 80-1976, *supra.*

Una vez concluido el descubrimiento de prueba, el 16 de diciembre de 2024, SITE presentó tres (3) solicitudes de sentencia sumaria[11]; una respecto a cada apelante. Junto con cada solicitud de sentencia sumaria, SITE acompañó un documento identificado como *Anejo A,* en el que expuso los hechos materiales incontrovertidos respecto a cada apelante, con prueba documental dirigida a comprobar la justificación del despido de los apelantes.

---

[10] Apéndice de la Apelación, Anejo 2, págs. 5-9.
[11] *Íd.,* Apéndice 3, 4 y 5 (Entradas Núm. 34, 35 y 36 de SUMAC respectivamente).

En respuesta, el 7 de marzo de 2025, los apelantes presentaron una *Oposición a la solicitud de sentencia sumaria*.[12] En síntesis, señalaron que, en la solicitud de sentencia sumaria, SITE añadió alegaciones que no fueron incluidas en la *Contestación a la Querella*. En concreto, los apelantes detallaron que existía controversia en cuanto a los hechos propuestos –a saber, los hechos 7 al 63– pues eran distintos a los incluidos por SITE en su contestación a querella.[13] En vista de lo anterior, arguyeron que SITE pretendía enmendar o insertar alegaciones nuevas a través de la solicitud de sentencia sumaria. Además, alegaron que SITE no acompañó prueba documental en apoyo de las alegaciones presentadas en la contestación a la querella. Por ello, los apelantes expusieron que en el caso existían controversias de hechos sustanciales que ameritaban la celebración de una vista en su fondo.

Los apelantes no acompañaron su escrito en oposición con prueba que controvirtiera la presentada por SITE. Empero, éstos alegaron que, el hecho de no haber incluido evidencia que sustentara su oposición, en forma alguna significaba que el foro primario tuviera que emitir sentencia sumaria en el caso. Así, solicitaron al TPI que denegara la solicitud de sentencia sumaria y señalara el juicio en su fondo.

El 20 de marzo de 2025, SITE presentó una *Réplica a oposición a la solicitud de Sentencia Sumaria* en la que, en resumen, expuso que los apelantes no se opusieron conforme exige la Regla 36 de Procedimiento Civil[14], no controvirtieron la prueba presentada por SITE y ni siquiera precisaron cuál es la controversia que alegan que existe sobre los hechos propuestos por SITE. [15] Además, añadieron

---

[12] *Íd.*, Anejo 6, págs. 1234-1251.
[13] Véase, página 5 del Apéndice 6 del recurso de apelación (Entrada Núm. 50 de SUMAC).
[14] 32 LPRA, Ap. V, R. 36.
[15] Véase la Anotación Judicial Núm. 58 del expediente digital del caso en SUMAC.

que los apelantes no probaron *prima facie* su reclamación de despido injustificado. Al respecto, señalaron que los apelantes fueron contratados con posterioridad a la *Ley de Transformación y Flexibilidad Laboral,* según enmendada (Ley Núm. 4-2017)[16], la cual enmendó el esquema probatorio de la Ley Núm. 80-1976, *supra,* por lo que correspondía a los apelantes el peso de la prueba de su reclamación. En virtud de lo anterior, SITE solicitó se desestimara con perjuicio la reclamación de los apelantes.

El 20 de marzo de 2025, el TPI emitió y notificó una *Orden* en la que concedió a los apelantes un término para presentar dúplica a la réplica de SITE. El foro *a quo* apercibió a los apelantes que, una vez transcurrido dicho término, el asunto quedaría sometido. Transcurrido el término, sin que los apelantes cumplieran con lo ordenado, el 1 de abril de 2025, el TPI emitió una orden y el asunto quedó sometido.

El 2 de junio de 2025, el TPI emitió y notificó la *Sentencia*[17] apelada. En esta, el foro primario expuso que SITE consignó en cada solicitud de sentencia sumaria una relación concisa y enumerada de los hechos materiales que, a su entender, no estaban en controversia, los cuales acompañó de prueba documental para sustentarlos. Respecto a los apelantes, el TPI expuso que el Sr. Vargas Rubio alegó de forma general que los hechos esbozados 7 al 63 estaban en controversia. El TPI destacó que, respecto a los demás apelantes, no se abundó ni se presentó oposición respecto a los hechos incontrovertidos esbozados por SITE en cada una de sus mociones de sentencia sumaria. Asimismo, el foro apelado señaló que los apelantes no acompañaron su oposición con prueba documental alguna. Añadió que, a pesar de habérsele concedido

---

[16] 29 LPRA sec. 121, *et.seq.*
[17] Apéndice de la Apelación, Anejo 7, págs. 1252-1266.

término para presentar su dúplica, los apelantes nada hicieron, por lo que el caso quedó sometido.

A su vez, el TPI expuso que las tres (3) mociones sumarias fueron sustentadas con la siguiente prueba documental:

1. Tres Declaraciones Juradas de la Sra. Celeste Martínez Cabán, Gerente de oficina y custodia de récords de SITE, con sus anejos.

2. Tres Declaraciones Juradas de la Sra. Marilyn Rodríguez Torres, "Health, Safety, and Environmental Manager de SITE, con sus anejos.

3. Tres Declaraciones Juradas del Sr. José Luis Rivera Rodríguez, "Operation Field Manager" de SITE, con sus anejos.

4. La Guía Manual de Seguridad en Terreno 2022.

5. Contestaciones a Primer Pliego de Interrogatorios y Producción de Documentos de los querellantes.

6. Transcripción de la deposición del Sr. Carlos Vargas Rubio.

7. Transcripción de la deposición del Sr. Luis Daniel Fernández Rivera.

8. Transcripción de la deposición del Sr. Eugenio Martínez de Jesús.[18]

Basado en la prueba presentada por SITE, el TPI determinó la procedencia de la sentencia sumaria respecto a cada apelante. De los documentos incluidos en la *Solicitud de Sentencia Sumaria,* el TPI determinó lo siguiente con respecto al señor Vargas Rubio:

> Según la prueba documental incluida, el Sr. Carlos Vargas Rubio incumplió con la política de seguridad al no notificar el incidente ocurrido el 9 de noviembre de 2022, y provocado por uno de los empleados que el Sr. Vargas Rubio supervisaba, al Sr. Rivera Rodríguez o a la Sra. Rodríguez Torres, según requerido. SITE advino en conocimiento del referido suceso por medio del Sr. Rivera Rodríguez al inspeccionar el vehículo. A raíz de ello, la compañía lo suspendió por tres días del 3 al 5 de enero de 2023.

> Además, surge de la prueba que el 8 de febrero de 2023, el Sr. Carlos Vargas Rubio recibió una amonestación al no asegurarse que el Sr. Víctor Ortiz, quien estaba bajo su supervisión, completara la inspección del vehículo apropiadamente previo a su operación. Quedó demostrado que, como parte de la política de seguridad, el Sr. Vargas Rubio tenía el deber de verificar que todas las inspecciones estén hechas correctamente previo a la operación del vehículo.

---

[18] *Íd.*, Anejo 7, pág. 1261.

Asimismo, se desprende de los documentos incluidos en la moción de sentencia sumaria, que el Sr. Carlos Vargas Rubio incumplió por tercera vez con las políticas de seguridad de la compañía el 26 de septiembre de 2023. En aquella ocasión, el co-querellante tenía a su cargo una brigada para limpiar enredaderas en un poste ubicado en el Bo. El Monte, en el municipio de Ponce. Mientras la brigada estaba despejando una enredadera de una secundaria, hizo contacto con la misma causando una interrupción en el servicio de energía eléctrica de un cliente. A causa de dicho incidente, el 26 de septiembre de 2023, el Sr. Vargas Rubio recibió una amonestación por dejar de cooperar con su supervisor, no enviar el reporte correspondiente en una hora como es requerido, no completarse el formato de trabajo crítico y no asistir al área del incidente para iniciar la investigación.[19]

Surge, también, que el Sr. Carlos Vargas Rubio, por cuarta ocasión, infringió la política de seguridad al instruir a los empleados a que levantaran una línea eléctrica y amarrarla con una cinta amarilla. Así las cosas, el 9 de noviembre de 2023, SITE despidió al Sr. Vargas Rubio tras incumplir y violentar la política de seguridad descrita en el manual y desplegar una conducta que provocó la pérdida de confianza con el cliente de la compañía.

En cuanto al señor Fernández Rivera, el TPI indicó lo subsiguiente:

Sus funciones consistían en cortar y podar árboles, así como estar pendiente de sus compañeros, las líneas eléctricas y notificar cualquier riesgo. El Sr. Fernández Rivera pactó en su contrato de empleo que cualquier violación a las políticas y normas de la compañía, incluidas las de seguridad, pudieran dar paso a su despido. Surge de la prueba que éste recibió la Guía Manual de Seguridad en Terreno 2022 y fue debidamente orientado sobre las políticas de seguridad de la compañía. Posteriormente, el 22 de octubre de 2023, comenzó a ocupar el puesto de arbolista a los fines de podar árboles cerca de las líneas eléctricas. El Sr. Carlos Vargas Rubio estaba encargado de supervisarle.

Se desprende de la prueba documental que el Sr. Luis Daniel Fernández Rivera incumplió con las políticas de seguridad en tres ocasiones distintas: el 5 de diciembre de 2022, 26 de septiembre de 2023 y el 3 de noviembre de 2023. A causa de los primeros dos incidentes, el Sr. Fernández Rivera recibió una amonestación por cada uno de ellos y tras haberse investigado el tercero, fue despedido el 9 de noviembre de 2023.[20]

En relación con el señor Martínez de Jesús, el TPI expresó lo sucesivo:

Por último, en cuanto al Sr. Eugenio Martínez de Jesús, se desprende de los anejos incluidos en la sentencia sumaria que éste firmó un contrato de empleo con la compañía el 16 de julio de 2022. Se acreditó, mediante la prueba documental sometida, que éste acusó recibo de las políticas, procedimientos y normas de la compañía y pactó en el contrato que cualquier violación a las reglas de conducta de la compañía pudiera ser motivo para el despido. El Sr.

---

[19] *Íd.*, Anejo 7, págs. 1262-1263.
[20] *Íd.*, Anejo 7, págs. 1263-1264.

> Eugenio Martínez de Jesús comenzó en la compañía en el puesto de "runner" y luego ocupó la posición de "Project Administrator". Como parte de sus funciones, se encargaba de hacer requisiciones de compra. Además, tenía a su haber validar la información, documentación y/o los proyectos que colocaban los supervisores en la plataforma llamada Heavy Job.
>
> Consta de la prueba documental sometida por la parte querellada y no controvertida por la parte querellante, que el Sr. Eugenio Martínez de Jesús recibió señalamientos sobre las requisiciones que realizaba al no identificar correctamente los códigos de costo, la categoría y el vendedor conocido como "vendor". Debido a múltiples deficiencias en su cargo de "Project Administrator", el 24 de agosto de 2023, SITE colocó al coquerellante en un plan de mejoramiento por un mes. Sin embargo, la conducta deficiente en las requisiciones continuó en septiembre de 2023, cuando se presentaron eventos adicionales. Posteriormente, ante el continuo patrón de incumplimiento y bajo rendimiento como "Project Administrator", y a pesar del plan de mejoramiento al que fue colocado, el 28 de septiembre de 2023, SITE despidió al Sr. Martínez de Jesús de la compañía.[21]

El TPI determinó que los apelantes fueron contratados con posterioridad a la Ley 4-2017, *supra,* por lo que a ellos correspondía el peso de la prueba para poder probar su reclamación, así como justificar la celebración de un juicio en su fondo, lo cual no hicieron. El TPI resolvió además que, los apelantes no refutaron ni alegaron de manera detallada y específica según requiere la Regla 36.3 de Procedimiento Civil, *supra.* En cuanto al Sr. Vargas Rubio, el TPI indicó que éste alegó, de forma general, que los incisos 7 al 63 se encontraban en controversia tras no formar parte de las alegaciones en la contestación a la querella. En virtud de lo anterior, el foro apelado concluyó que los apelantes no controvirtieron los hechos propuestos por SITE, conforme requiere la Regla 36.3(c) de Procedimiento Civil, no sustentaron su oposición con prueba alguna y tampoco probaron que el despido fue injustificado.

Por otro lado, el TPI concluyó que los hechos propuestos por SITE quedaron sustentados por la prueba documental presentada. En ese sentido, el TPI decretó que SITE logró demostrar, que los tres apelantes incurrieron en múltiples violaciones a las políticas de

---

[21] *Íd.*, Anejo 7, págs. 1264-1265.

seguridad de la compañía. En vista de ello, el *foro a quo* determinó que SITE probó que el despido fue justificado, lo cual quedó sustentado con la prueba documental presentada, que no fue controvertida por los apelantes.

Así pues, el TPI declaró Ha Lugar las mociones de sentencia sumaria presentadas por SITE y, desestimó, con perjuicio, la reclamación de los apelantes.

Inconformes, el 2 de junio de 2025, los apelantes acuden ante nos vía *Recurso de Apelación* y le imputan al foro de instancia la comisión de los siguientes errores:

> Erró el TPI al acoger las Mociones de Sentencia Sumaria presentadas por la querellada-apelada y dictar Sentencia Sumaria existiendo hechos esenciales y sustanciales en controversia, los cuales ameritan la concesión de un juicio en su fondo.
>
> Erró el TPI al dictar Sentencia Sumaria acogiendo alegaciones sobre hechos distintos a los alegados en la contestación a la querella.

El 14 de julio de 2025, la parte apelada presentó un *Alegato en oposición* en el que solicitó que confirmemos el dictamen apelado toda vez que la parte apelante incumplió con la normativa establecida en la Regla 36 de Procedimiento Civil, *supra,* al no mostrar con prueba documental que el despido fue injustificado.

**II.**

**A.**

Es harto conocido que el mecanismo procesal de la sentencia sumaria se rige por la Regla 36.1 de Procedimiento Civil.[22] El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un

---

[22] Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1.

juicio plenario.[23] De esta forma, se promueve la descongestión de calendarios.[24]

Por medio de este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta.[25] Sin embargo, la sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes.[26]

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia.[27] Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo.[28] De igual modo, la parte promovente puede presentar una sentencia sumaria por insuficiencia de prueba si demuestra que (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho.[29]

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real por lo cual cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria.[30] En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre

---

[23] *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

[24] *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

[25] *Íd.*, pág. 332.

[26] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).

[27] Regla 36.1 de Procedimiento Civil, *supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).

[28] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

[29] *Pérez v. El Vocero de PR*, 149 DPR 427, 446-447 (1999).

[30] *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 110.

los hechos materiales.[31] De esta manera, la parte promovida debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición.[32] Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa".[33] No puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa.[34]

En síntesis, ha quedado establecido que los tribunales no pueden dictar sentencia sumaria en cuatro (4) situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho.[35]

Entretanto, la Regla 36.3 de Procedimiento Civil establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida.[36] Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3 (a) de Procedimiento Civil dispone que la misma tiene que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones

---

[31] *Íd.* (*citando a Ramos Pérez v. Univisión, supra*, pág. 214).
[32] *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).
[33] *Íd.*
[34] Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c); véase, además, *SLG Zapata-Rivera v. JF Montalvo, supra*, pág. 452-453; *Ramos Pérez v. Univisión, supra*, págs. 215-216.
[35] *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).
[36] Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3.

juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
(6) el remedio que debe ser concedido.[37]

Mientras tanto, la Regla 36.3 (b) de Procedimiento Civil prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.[38] Asimismo, cuando se presente una solicitud de sentencia sumaria conforme a la Regla 36 de Procedimiento Civil "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede".[39]

En esa misma línea, la juzgadora o el juzgador de los hechos debe evaluar la prueba presentada para determinar cuáles hechos han quedado demostrados sujeto a que "[e]l peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes";[40] "[l]a obligación de presentar evidencia primariamente recae sobre la parte que sostiene la afirmativa en el asunto en controversia";[41] y en casos civiles, la decisión de la juzgadora y el juzgador se realizará mediante la preponderancia de

---

[37] Regla 36.3 (a) de Procedimiento Civil, *Íd.*, R. 36.3 (a).
[38] Regla 36.3 (b) de Procedimiento Civil, *Íd.*, R. 36.3 (b).
[39] Regla 36.3 (c) de Procedimiento Civil, *Íd.*
[40] Regla 110 (A) de Evidencia, 32 LPRA Ap. VI, R. 110 (A).
[41] Regla 110 (B) de Evidencia, *Íd.*, R. 110 (B).

la prueba conforme a criterios de probabilidad.[42] La preponderancia de la prueba ha sido definida "como establecer como hechos probados aquéllos que con mayores probabilidades ocurrieron".[43]

De otra parte, nuestro Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.[44] En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil,[45] al igual que los criterios que la jurisprudencia le exige al foro primario. Asimismo, debe examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, nuestro máximo foro reconoció que el foro apelativo está limitado, toda vez que no puede tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni adjudicar los hechos materiales en controversia.[46] En segundo lugar, señaló que el Tribunal de Apelaciones debe revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[47] En tercer lugar, ordenó que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla

---

[42] Regla 110 (F) de Evidencia, *Íd.*, R. 110 (F).
[43] *Berríos v. U.P.R.*, 116 DPR 88, 101 (1985) (*citando a Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980)).
[44] *Meléndez González et al. v. M. Cuebas, supra.*
[45] Regla 36 de Procedimiento Civil, *supra*, R. 36.
[46] *Meléndez González et al. v. M. Cuebas, supra,* pág. 118.
[47] *Íd.*; Regla 36 de Procedimiento Civil, *supra.*

36.4 de Procedimiento Civil.[48] En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho a la controversia.[49]

**B.**

La Ley Núm. 80 de 30 de mayo de 1976, conocida también como la *Ley de Despido Injustificado*, según enmendada ("Ley 80-1976")[50], fue creada con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo. A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justicieros y consustanciales con los daños causados por un despido injustificado.[51]

El Artículo 2 de la Ley Núm. 80-1976, según enmendada, *supra*, establece, en lo atinente, que:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
>
> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el

---

[48] *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118; Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4.
[49] *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 119.
[50] 29 LPRA sec. 185a *et seq.*
[51] Véase, Exposición de Motivos de la Ley 80-1976, *supra.*; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 424 (2013); *Feliciano Martes v. Sheraton*, 182 DPR 368 (2011).

> cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
>
> (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
>
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.
>
> [...]

Cabe destacar que, "la enumeración de escenarios que se consideran justa causa contenida en la Ley Núm. 80 no es taxativa".[52] Por consiguiente, la Ley Núm. 80-1976, *supra*, no puede ser considerada un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una.[53] Los patronos, pueden aprobar reglamentos internos y normas de conducta en el lugar de trabajo que estimen necesarias y los empleados estarán sujetas a ellas, siempre que estos cumplan con un criterio de razonabilidad.[54]

De este modo, la mencionada ley fue aprobada con el fin primordial de proteger "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo mediante la aprobación de una ley que, a la vez que otorgue unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado, desaliente la incidencia de este tipo de despido".[55] Los empleados que se puedan beneficiar de esta ley tienen que ser de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración, y (3) sean despedidos de su cargo sin que haya mediado justa causa.[56] Se define como justa causa para

[52] *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 930 (2015).

[53] *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 773 (2022), citando a *Srio. del Trabajo v. G.P. Inds., Inc.*, 153 DPR 223, 243 (2001).

[54] *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra*, pág. 773.

[55] *Feliciano Martes* v. *Sheraton*, 182 DPR 368, 379 (2011).

[56] *Rivera Figueroa* v. *The Fuller Bush Co.*, 180 DPR 894, 906 (2001).

el despido la que tiene origen para el buen funcionamiento de la empresa y no al libre arbitrio del patrono.[57]   Ahora bien, los patronos deben pagar una mesada a los empleados que son despedidos sin justa causa.[58]   Todo despido que no fuese basado en una justa causa es considerado injustificado y en el cual el empleado recibe el beneficio de un remedio exclusivo.[59]

El Artículo 11 de la citada ley establecía, en su inciso (a)[60], lo siguiente:

> [e]n toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a a 185m de este título, **el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con lo establecido en la sec. 185a de este título.** (Énfasis suplido).

Así, bajo el referido estatuto, el patrono tiene el peso probatorio de demostrar que el despido fue uno justificado por medio de preponderancia de la prueba, de lo contrario se presume que fue injustificado.[61] Como cuestión de umbral, para que el empleado se beneficie de la presunción, debe demostrar que fue empleado de un comercio, industria u otro negocio; su contrato era por tiempo indeterminado; recibía remuneración por su trabajo, y que fue despedido de su puesto.[62]

Una vez activada la presunción estatutaria a favor del empleado, el patrono tiene el deber de presentar prueba para rebatir la presunción y, además, persuadir al juzgador mediante preponderancia de la evidencia[63]. En tal sentido, "los temas de carga de prueba y presunciones son inseparables"[64].

---

[57] *Srio. del Trabajo* v. *I.T.T.*, 108 DPR 536, 542 (1979).
[58] *SLG Zapata* v. *J.F Montalvo*, 189 DPR 414, 424 (2013).
[59] *Díaz* v. *Wyndham Hotel Corp.*, 155 DPR 364, 378 (2001).
[60] 29 LPRA Sec. 185k
[61] *Íd.,* pág. 388.
[62] *Rivera Figueroa* v. *The Fuller Bush Co.*, *supra*, pág. 907.
[63] *Íd.*, pág. 911
[64] *Íd.*, pág. 913 (Énfasis en el original); E.L. Chiesa Aponte, Tratado de derecho probatorio: Reglas de evidencia de Puerto Rico y federales, República Dominicana, Ed. Corripio, 1998, T. II, pág. 1088.

Sin embargo, la *Ley de Transformación y Flexibilidad Laboral,* Ley Núm. 4 de 26 de enero de 2017 (Ley 4-2017), enmendó varias disposiciones de la Ley Núm. 80-1976, *supra.* En lo aquí concerniente, una de las enmiendas aprobadas fue el orden de prueba, puesto que se eliminó el inciso (a) del Artículo 11 de la Ley 80-1976, *supra.* Ésta contenía la frase que le imponía al patrono el peso de la prueba.[65]

Ahora bien, el Artículo 1.2 de la Ley 4-2017, *supra,* expresa lo siguiente:

> Los empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en los Artículos de ésta.

En *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra, el Tribunal Supremo resolvió que los efectos de las enmiendas a la Ley 80-1976 ante la aprobación de la Ley 4-2017 no tienen efecto retroactivo. Así y respecto al asunto del orden de prueba, la Alta Curia expuso lo siguiente:

> Luego de analizar minuciosamente las disposiciones estatutarias pertinentes, la intención legislativa y el principio jurídico de la irretroactividad de las leyes, coincidimos en este asunto con la aplicación efectuada por el tribunal apelativo intermedio, pues la disposición enmendada no es de aplicación retroactiva.
>
> En vista del marco de derecho antes reseñado, la disposición aplicable es la que se encontraba vigente al momento de los hechos que dieron lugar a la causa de acción por despido injustificado.

Los apelantes fueron despedidos en el año 2023, por lo que la Ley Núm. 4-2017, *supra,* es la aplicable de acuerdo con el momento de los hechos que dieron lugar a la causa de acción por despido injustificado.[66]

---

[65] *Íd.,* pág. 776.
[66] *Íd.,* pág. 776.

**c.**

La Ley Núm. 2-1961, tiene como propósito principal proveerle al obrero un mecanismo procesal expedito que facilite y acelere el trámite de sus reclamaciones laborales.[67] El procedimiento sumario "es el recurso principal 'para la implantación de la política pública del Estado de proteger el empleo, desalentando el despido sin justa causa y proveyendo al obrero así despedido los medios económicos para la subsistencia de éste y de su familia, en la etapa de transición entre empleos".[68] A su vez, el Tribunal Supremo ha expresado que la Ley Núm. 2, *supra*, provee un procedimiento expedito para lograr los propósitos de proteger el empleo, desalentar el despido sin justa causa y proveerle al empleado despedido los remedios económicos para su subsistencia mientras obtiene un nuevo empleo.[69]

La sección tres (3) de la Ley Núm. 2-1961[70], *supra,* establece que el secretario del tribunal notificará a la parte querellada con copia de la querella que debe responder dentro de diez (10) días a partir de la notificación, si la querella es dentro del distrito judicial o quince (15) días si la misma es fuera del distrito judicial de la acción en su contra constatando haber servido copia de esta al abogado de la parte querellante o a ésta si hubiere comparecido por derecho propio. Consecuentemente, de no responder dentro del término establecido, se dictará sentencia en su contra, concediendo el remedio solicitado y sin más citarle ni oírle.[71] La referida sección establece además que, el querellado deberá hacer una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, entendiéndose que renuncia a todas las defensas u objeciones que

---

[67] *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 928 (1996).
[68] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 732 (2016), (citando a *Rivera v. Insular Wire Products*, *supra*, pág. 923). Véase, además, *Izagas Santos v. Family Drug Center*, 182 DPR 463, 480 (2011).
[69] *Ocasio* v. *Kelly Servs*, et al, 163 DPR 653, 666 (2005).
[70] *supra* sec. 3120.
[71] Ley Núm. 2-1961, *supra* sec. 3121

no incluya en dicha alegación responsiva.[72] En esa línea, la sección 4 del referido estatuto dispone que "si el querellado radicara su contestación a la querella en la forma y en el término dispuestos en la Sección 3 de esta Ley, el juicio se celebrará sin sujeción a calendario a instancias del querellante, previa notificación al querellado."[73]

Cónsono con lo anterior, el TPI no debe permitir enmiendas a la contestación a la querella a menos que se trate de situaciones en que la enmienda tenga el propósito u objetivo de clarificar o ampliar, en beneficio de la pronta solución del caso, una defensa afirmativa previamente contemplada en la contestación en los casos que se tramiten conforme la Ley Núm. 2-1961, *supra*.[74] Ello, en virtud de que permitir una enmienda a la contestación de la querella atenta contra el trámite sumario.[75] Además, no se debe permitir que un patrono enmiende su contestación debido a que conoce las razones que dieron lugar para el despido de un empleado.[76] La citada ley permite que un patrono presente todas las defensas afirmativas pero impide que un patrono dilate innecesariamente los procedimientos.[77]

Ahora bien, una vez emitida una Sentencia por el TPI, cualquiera de las partes perjudicadas, podrá comparecer ante el Tribunal de Apelaciones, en el término de diez (10) días jurisdiccionales, computados a partir de la notificación de la sentencia del TPI.[78] En los casos que se tramiten con arreglo a esta ley, se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las

---

[72] 32 LPRA secc. 3120.
[73] *Íd.*
[74] *Srio del Trabajo v. J.C. Penney Co., Inc.*, 119 DPR 660, 669 (1987)
[75] *Íd.*
[76] *Srio del Trabajo v. J.C. Penney Co., Inc., supra*, págs. 669-670.
[77] *Srio del Trabajo v. J.C. Penney Co., Inc., supra*, pág. 670.
[78] Ley Núm. 2-1961, *supra* sec. 3121.

mismas o con el carácter sumario del procedimiento establecido por esta ley.[79]

**III.**

Adelantamos que, por estar estrechamente relacionados, discutiremos los señalamientos de error en conjunto. En el recurso que nos ocupa, los apelantes arguyen que el foro primario incidió al acoger las solicitudes de sentencia sumaria presentadas por SITE y dictar sentencia sumaria, pues sostienen que existen hechos esenciales y sustanciales en controversia y que procedía la celebración de un juicio en su fondo. Además, alegan que el foro apelado incidió al dictar sentencia sumaria y acoger alegaciones de hechos distintas a las incluidas por SITE en la contestación a la querella.

En primer lugar y, a tenor con el marco jurídico previamente expuesto, nos encontramos en la misma posición que el TPI en revisar una solicitud de sentencia sumaria. Primero, nos compete evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra*, respecto a la moción de sentencia sumaria, así como su oposición. Veamos.

Luego de evaluar la *Solicitud de Sentencia Sumaria* presentada por SITE, concluimos que esta cumplió con los requisitos de forma dispuestos por la Regla 36.3 de Procedimiento Civil, *supra*. En la referida solicitud, SITE enumeró en las tres (3) mociones sesenta y tres (63) determinaciones de hechos que, a su juicio, no versaba controversia sobre ellos. Como respaldo a tales hechos, anejó los documentos correspondientes e hizo referencia a cada uno de ellos de forma específica.

Por otra parte, luego de evaluar la oposición presentada por los apelantes, concluimos que éstos no cumplieron con los

---

[79] Ley Núm. 2-1961, *supra* sec. 3120.

requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*. Las alegaciones presentadas por éstos en su escrito en oposición eran generales y no hacían referencia a las alegaciones y prueba presentada por SITE; tampoco acompañaron su oposición con documentos que controvirtieran los hechos propuestos por SITE. Los apelantes no incluyeron prueba que rebatiera la presunción de que el despido fue justificado. Por consiguiente, no sustentaron sus argumentos para que el TPI y este Tribunal evaluaran las alegaciones de los apelantes con respecto a que fueron despedidos injustificadamente.

Ahora bien, nos corresponde determinar si existen hechos en controversia que impidan la adjudicación sumaria del caso. Tras un examen cuidadoso del expediente y las mociones de sentencia sumaria y oposición, así como los documentos incluidos en las mociones de sentencia sumaria, concluimos que no existen hechos materiales en controversia. Ante ello, coincidimos con las determinaciones de hechos acogidas por el TPI y adoptamos dichas determinaciones de hechos. Por último, nos corresponde revisar *de novo* si el TPI aplicó el derecho correctamente.

Los apelantes aducen que el TPI erró en resolver sumariamente el caso toda vez que SITE instó nuevas alegaciones, relacionadas a la causa del despido, en las mociones de sentencia sumaria. Alegó que, dichas alegaciones produjeron el efecto de enmendar la contestación a la querella. Por ende, al incluirse otras alegaciones, existen hechos en controversia que impedían la adjudicación de la controversia de forma sumaria. No les asiste la razón.

En su contestación a la querella, SITE alegó que el despido de los apelantes fue justificado. En específico, en el acápite 5 de sus defensas afirmativas, SITE alegó lo siguiente:

> [L]os querellantes fueron despedidos debido a *reiteradas violaciones* a las políticas y protocolos de análisis de riesgos de la Compañía. Los querellantes *recibieron amonestaciones, en repetidas ocasiones, por incidentes separados* en los que violaron las medidas de seguridad y/o protocolo de [SITE]. (Énfasis nuestro).

Al evaluar la referida contestación a la querella junto con las solicitudes de sentencia sumaria, surge con claridad que SITE no añadió nuevas alegaciones sobre las causas de despido de los apelantes, sino que detalló de forma individualizada <u>respecto a cada apelante</u> los incidentes y violaciones a las políticas y los protocolos de riesgo en que incurrió cada uno, así como las amonestaciones que cada apelante recibió previo a su despido. Lo anterior fue levantado por SITE desde que presentó su contestación a la querella. En vista de lo anterior, resulta claro que, en sus solicitudes de sentencia sumaria, lo que SITE hizo fue clarificar o ampliar una defensa afirmativa que había interpuesto previamente en su contestación. No se cometió el error señalado.

Ahora bien, previo a la aprobación de la Ley Núm. 4-2017, *supra*, en el esquema probatorio le correspondía al patrono demostrar que el despido fue uno justificado. Ello, en virtud de que al empleado le asistía la presunción de que la cesantía fue una injustificada. Ahora bien, un empleado contratado con posterioridad a la Ley Núm. 4-2017, no le asiste los beneficios que existían previo a la citada ley. Cónsono con lo anterior, el Tribunal Supremo interpretó que los empleados contratados y cesanteados con posterioridad a la aprobación de la Ley Núm. 4-2017, *supra*, les corresponde probar que el despido fue injustificado.[80] Surge de las determinaciones de hechos que, los apelantes firmaron un contrato de empleo con la compañía SITE, luego de la aprobación de la Ley Núm. 4-2017, *supra*. Por ende, la causa de acción de los apelantes nació estando vigente la Ley 4-2017, por lo que, al amparo de los

---

[80] *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, supra.

estatutos vigentes y conforme resuelto por el Tribunal Supremo en *Ortiz v. Medtronic*, supra, el peso de la prueba correspondía a los apelantes.

El patrono demostró la justa causa requerida para el despido justificado. Los apelantes fueron despedidos por sus reiteradas faltas al protocolo y políticas operacional de SITE. Estos no presentaron prueba que controvierta o establezca dudas sobre el hecho de que el despido fue justificado. La ausencia de esa prueba nos lleva a concluir que procede la desestimación con perjuicio de la reclamación por despido justificado.

Por consiguiente, resolvemos que el TPI actuó correctamente al declarar Ha Lugar las solicitudes de sentencia sumaria de SITE y, por tanto, desestimar, con perjuicio la reclamación de los apelantes. Consecuentemente, confirmamos el dictamen apelado.

**IV.**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

**Notifíquese.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones